UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KURT KOMODA, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>PALMCO ENERGY NJ, LLC and PALMCO POWER NJ, LLC,<br><br>    Defendants. | Civil Action No. _____<br><br>Class Action Complaint |

Plaintiff Kurt Komoda, by his attorneys, Meiselman, Packman, Nealon, Scialabba & Baker P.C., as and for his class action complaint, alleges, with personal knowledge as to his own actions, and upon information and belief as to those of others, as follows:

### Nature Of This Case

1. This action seeks to redress the deceptive pricing practices of Palmco Energy NJ, LLC and Palmco Power NJ, LLC (together "Palmco") that have caused thousands of New Jersey consumers to pay considerably more for their electricity and natural gas than they should otherwise have paid. Palmco has taken advantage of the deregulation of the retail electricity market in New Jersey by luring consumers into switching electricity suppliers with false promises of a rate based on market costs and prices.

2. Unfortunately for New Jersey consumers, however, Defendant's rates bear little relation to prevailing market conditions. As a result, New Jersey consumers are being fleeced millions of dollars in exorbitant charges for electricity.

3. This suit is brought pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* and the common law of New Jersey on behalf of a class of New Jersey consumers who purchased electricity and natural gas from Palmco from March 13, 2008 to the present. It seeks, *inter alia*, injunctive relief, actual damages and refunds, treble damages, punitive damages, attorneys' fees, and the costs of this suit.

## Jurisdiction

4. Jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy is in excess of $5 million.

## Parties

5. Plaintiff Kurt Komoda resides in North Brunswick, New Jersey. Mr. Komoda has been a Palmco customer since 2012 and, as a result of Defendant's deceptive conduct, incurred excessive charges for electricity and natural gas.

6. Defendants Palmco Energy NJ, LLC and Palmco Power NJ, LLC are corporations with their shared principal place of business located at 1350 60th Street in Brooklyn, New York. Defendants have tens of thousands of customers in New Jersey, and they have tens of millions of dollars in combined revenues.

## Operative Facts

7. In 1999, the electric and natural gas utility industry within the State of New Jersey was restructured. Among the goals of the reorganization were increased competition and deregulation within the industry, with an eye towards achieving greater consumer choice and an overall reduction of energy rates. As a result, the State's electric and natural gas industry is open to competition, and consumers may choose their supplier of electricity and natural gas.

8. The new energy suppliers, who compete against local utilities such as Public Service Electric and Gas Company ("PSE&G"), are known as energy service companies, or "ESCOs." While ESCOs supply the power, the delivery of electricity and natural gas to homes remains the job of the local utilities.

9. As part of the deregulation plan, ESCO's, like Palmco, do not have to file the electricity rates they charge with the New Jersey Board of Public Utilities or the method by which they set their rates.

10. However, Palmco takes advantage of the deregulation and the lack of regulatory oversight in the energy market to deceptively charge New Jersey consumers exorbitant rates for electricity and natural gas. In fact, Palmco's rates are substantially higher than other ESCOs or local utilities.

**Palmco Charges Deceptively High Natural Gas Rates**

11. Palmco markets natural gas using uniform and non-negotiable contracts that represent to consumers that the price for natural gas Palmco charges "varies from month to month based on the applicable monthly NYMEX closing price for natural gas, applicable interstate transportation costs, and supply and agency functions that Palmco performs for you, and other prevailing market conditions." *See* Exhibit 1.

12. Palmco's representation that its rates are based on the NYMEX closing price for natural gas (which is a wholesale rate) is false and misleading. To the contrary, there are periods of time during the class period and during the time Mr. Komoda has been a Palmco customer in which the NYMEX price declines or remains steady while Palmco's prices rise. Palmco did not disclose this material fact to its customers.

13. The representation that Palmco's natural gas prices are based on "prevailing market conditions" is also false and misleading.

14. In fact, from November 2012 until February 2014 (during which time Mr. Komoda was a Palmco customer), the price per therm[1] that Palmco charged went up from $1.098 per therm to $2.102 per therm, an increase of almost 100%. At no time during this period did Palmco charge less than $1.064 per therm.

15. In contrast, the price that PSE&G (the local utility that supplied Mr. Komoda's natural gas before he switched to Palmco) charged in November 2012 was $0.54 per therm, and it was only $0.361 per therm in February 2014. At no time did PSE&G charge more than $0.544 per therm. In other words, while the local utility managed to lower natural gas prices, Palmco's rates more than doubled. In fact, Palmco's natural gas rate was at one point almost six times higher than PSE&G's rate.

16. While local utilities' natural gas rates may demonstrate less fluctuation versus that of the wholesale market, over time, the rates utilities like PSE&G charge are an accurate reflection of rates that are based on prevailing market conditions. In other words, the natural gas rates that utilities charge are an accurate measure of what rates based on prevailing market conditions should be. That Palmco's rates were always substantially higher than PSE&G's rates therefore demonstrates that its rates are not in fact based on prevailing market conditions.

17. Moreover, Palmco's representation that its rates are based on market conditions is belied by the fact that its prices rise or remain steady in some periods when natural gas costs and prices decline. Palmco does not disclose these material facts to consumers.

---

[1] Quantities of natural gas are usually measured in cubic feet. One "therm" is 100 cubit feet of natural gas.

18. Palmco's natural gas rates are also substantially higher than those charged by other ESCOs.

19. A reasonable consumer would understand that the price the local utility and other ESCOs charge is part of prevailing market conditions and that a price based on prevailing market conditions would be consistent with the prices charged by the local utility and other ESCOs.

20. The following table, which includes the monthly per therm rate charged by Palmco, the rate that would have been charged by PSE&G, and the applicable NYMEX closing price, demonstrates that Palmco's rates are neither based on the NYMEX closing price nor are they based on prevailing market conditions:

| **Billing Period** | **Palmco Per Therm Rate** | **PSE&G Per Therm Rate** | **NYMEX Closing Price** |
|---|---|---|---|
| 11/15/12 – 12/19/12 | $1.09850000 | $0.543987 | $0.347 |
| 12/19/12-1/22/13 | $1.17488095 | $0.544048 | $0.370 |
| 1/22/13 – 2/20/13 | $1.17485437 | $0.543981 | $0.335 |
| 2/20/13 – 3/21/13 | $1.14426829 | $0.543980 | $0.323 |
| 3/21/13 – 4/22/13 | $1.09512821 | $0.543902 | $0.343 |
| 4/22/13 – 5/21/13 | $1.06454545 | $0.544418 | $0.398 |
| 5/21/13 – 6/21/13 | $1.06500000 | $0.544096 | $0.415 |
| 6/21/13 – 7/22/13 | $1.06500000 | $0.543740 | $0.415 |
| 7/22/13 – 8/20/13 | $1.06444444 | $0.544129 | $0.371 |
| 8/20/13 – 9/20/13 | $1.06500000 | $0.544260 | $0.346 |
| 9/20/13 – 10/20/13 | $1.06454545 | $0.543735 | $0.357 |
| 10/21/13 – 11/18/13 | $1.06451613 | $0.314631 | $0.350 |
| 11/18/13 – 12/19/13 | $1.15764045 | $0.193998 | $0.350 |
| 12/19/13 – 1/23/14 | $1.40147727 | $0.425839 | $0.382 |
| 1/23/14 – 2/21/14 | $2.10223301 | $0.361069 | $0.441 |

21. Based on the data in this table, the following chart graphically demonstrates the disconnect between Palmco's rates, PSE&G's natural gas rates, and the NYMEX:



22. The costs for interstate transportation and supply and agency functions that Palmco performs or incurs do not change substantially over time and do not account for a substantial portion of Palmco's natural gas rates, and any changes to these costs do not account for Palmco's exorbitant rates.

23. Thus, Palmco's statements with respect to the natural gas rates it will charge are materially misleading because consumers do not receive a price based on market conditions, nor do they receive a price based on the NYMEX closing price. Instead, consumers are charged rates that are substantially higher. Palmco fails to disclose this material fact to its customers.

24. Palmco's statements regarding its natural gas rates are materially misleading, as the most important consideration for any reasonable consumer when choosing an energy supplier is price. No reasonable consumer who knows the truth about Palmco's exorbitant rates would choose Palmco as a natural gas supplier.

25. In fact, all that Palmco offers customers is natural gas delivered by local utilities, a commodity that has the exact same qualities as natural gas supplied by other ESCOs or local utilities. Other than potential price savings, there is nothing to differentiate Palmco from other ESCOs or local utilities, and the potential for price savings is the only reason any reasonable consumer would enter into a contract for natural gas supply with Palmco.

### Palmco Charges Deceptively High Electricity Rates

26. Palmco markets its electricity sales using uniform and non-negotiable contracts that represent to consumers that the price for electricity Palmco charges "will vary from month to month" and "will be based on a monthly zonal locational marginal price ('LMP') determined on a day ahead or real time basis, any supply and agency functions that Palmco performs for you, certain transmission capacity, ancillary, and administrative costs incurred by Palmco, and other prevailing market conditions." *See* Exhibit 1.

27. Palmco's representation that its rates are based on the LMP for electricity is false and misleading. To the contrary, there are periods of time during the class period and during the time Mr. Komoda has been a Palmco customer in which the LMP declines or remains steady while Palmco's prices rise. Palmco does not disclose this material fact.

28. The representation that Palmco's electric prices are based on "prevailing market conditions" is also false and misleading.

29. In fact, from November 2012 until February 2014 (during which time Mr. Komoda was a Palmco customer), the price per kilowatt that Palmco charged went up from $0.158 per kilowatt hour to $0.319 per kilowatt hour, an increase of more than 100%. At no time during this period did Palmco charge less than $0.148 per kilowatt hour.

30. In contrast, the price that PSE&G (the local utility that supplied Mr. Komoda's electricity before he switched to Palmco) charged in November 2012 was $0.113 per kilowatt hour, and it was only $0.112 per kilowatt hour in February 2014. At no time did PSE&G charge more than $0.113 per kilowatt hour. In other words, while the local utility managed to lower electricity rates, Palmco's more than doubled. In fact, Palmco's electricity rate was at one point almost three times higher than PSE&G's rate.

31. While local utilities' electricity rates may demonstrate less fluctuation over that of the wholesale market, over time, the rates utilities like PSE&G charge are an accurate reflection of rates that are based on prevailing market conditions. In other words, the electricity rates that utilities charge are an accurate measure of what rates based on prevailing market conditions should be. That Palmco's rates were always substantially higher than PSE&G's rates therefore demonstrates that Palmco's rates are not in fact based on prevailing market conditions.

32. Moreover, Palmco's claim that its rates are based on market conditions is belied by the fact that its prices rise or remain steady in some periods when electricity costs decline. Palmco does not disclose these material facts to consumers.

33. Palmco's electricity rates are also substantially higher than those charged by other ESCOs.

34. A reasonable consumer would understand that the price the local utility and other ESCOs charge is part of prevailing market conditions and that a price based on prevailing market conditions would be consistent with the price charged by the local utility and other ESCOs.

35. All that Palmco offers customers is electricity delivered by local utilities, a commodity that has the exact same qualities as electricity supplied by other ESCOs or local utilities. Other than potential prices savings, Palmco offers nothing of value that other ESCOs or local utilities do not offer.

36. The following table, which includes the monthly electricity rate charged by Palmco, the rate that would have been charged by PSE&G, and the applicable LMP, demonstrates that Palmco's rates are neither based on the LMP nor are they based on prevailing market conditions:

| **Date** | **Palmco** | **PSE&G** | **Monthly Zonal Locational Marginal Price ("LMP")** |
|---|---|---|---|
| 11/15/12 – 12/19/12 | $0.15800000 | $0.106693 | $0.03433 |
| 12/19/12-1/22/13 | $0.14826840 | $0.106797 | $0.03753 |
| 1/22/13 – 2/20/13 | $0.18878935 | $0.108547 | $0.03338 |
| 2/20/13 – 3/21/13 | $0.15898990 | $0.109646 | $0.03943 |
| 3/21/13 – 4/22/13 | $0.15896703 | $0.110967 | $0.04068 |
| 4/22/13 – 5/21/13 | $0.15898413 | $0.112794 | $0.04488 |
| 5/21/13 – 6/21/13 | $0.16532520 | $0.113008 | $0.04157 |
| 6/21/13 – 7/22/13 | $0.17634113 | $0.113618 | $0.05763 |
| 7/22/13 – 8/20/13 | $0.20684435 | $0.109211 | $0.03800 |
| 8/20/13 – 9/20/13 | $0.17417417 | $0.108829 | $0.04061 |
| 9/20/13 – 10/20/13 | $0.17760870 | $0.109384 | $0.03572 |
| 10/21/13 – 11/18/13 | $0.18182561 | $0.109510 | $0.03761 |
| 11/18/13 – 12/19/13 | $0.18922500 | $0.109650 | $0.04227 |
| 12/19/13 – 1/23/14 | $0.24599222 | $0.109708 | $0.18039 |
| 1/23/14 – 2/21/14 | $0.31916667 | $0.112985 | $0.12197 |

37. Based on the data in this table, the following chart graphically demonstrates the disconnect between Palmco's rates, PSE&G's electricity rates, and LMP:



38. The costs for supply and agency functions that Palmco performs, as well as transmission capacity, ancillary, and administrative costs, do not change substantially over time and they do not account for a substantial portion of Palmco's electricity rates, and any changes to these costs do not account for Palmco's exorbitant rates.

39. Thus, Palmco's statements with respect to the electric rates it will charge are materially misleading because customers do not receive a price based on market conditions, nor do they receive a price based on the LMP. Instead, consumers are charged rates that are substantially higher. Palmco fails to disclose this material fact to its customers.

40. Palmco's statements regarding its electricity rates are materially misleading, as the most important consideration for any reasonable consumer when choosing an energy supplier is price. No reasonable consumer who knows the truth about Palmco's exorbitant rates would choose Palmco as a natural gas supplier. Other than potential price savings, there is nothing to differentiate Palmco from other ESCOs or local utilities, and the potential for price savings is the

only reason any reasonable consumer would enter into a contract for electricity supply with Palmco.

### Class Action Allegations

41.     Plaintiff brings this action on his own behalf and additionally, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class of all New Jersey State residents who were Palmco customers from March 13, 2008 to the present.

42.     Excluded from the Class are Defendants; any parent, subsidiary, or affiliate of Defendants; any entity in which Defendants have or had a controlling interest, or which Defendants otherwise control or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendants.

43.     This action is brought as a class action for the following reasons:

    a.     The Class consists of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

    b.     There are questions of law or fact common to the Class that predominate over any questions affecting only individual members, including:

        i.     whether Defendants violated N.J.S.A. 56: 8-1 *et seq*.;

        ii.     whether Defendants breached their contract with New jersey consumers by charging a rate higher than that provided for in the agreement;

        iii.     whether Defendants are being unjustly enriched by deceptively charging rates substantially over those available in the market;

        iv.     whether Plaintiff and the Class have sustained damages and, if so, the proper measure thereof; and

    v.  whether Defendants should be enjoined from continuing to charge exorbitant rates based on undisclosed factors;

  c.  The claims asserted by Plaintiff are typical of the claims of the members of the Class;

  d.  Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has retained attorneys experienced in class and complex litigation, including class litigation involving consumer protection and ESCOs;

  e.  Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants;

  f.  Defendants have acted on grounds that apply generally to the Class, namely representing that its rates are based on NYMEX closing prices or LMP or prevailing market conditions when Defendants' rates are in fact substantially higher, so that final injunctive relief prohibiting Defendants from continuing their deceptive practices is appropriate with respect to the Class as a whole;

  g.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

    i.  Absent a class action, Class members as a practical matter will be unable to obtain redress, Defendants' violations of its legal obligations will continue without remedy, additional consumers and purchasers will be harmed, and Defendants will continue to retain their ill-gotten gains;

    ii.  It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

    iii.  When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class;

    iv.  A class action will permit an orderly and expeditious administration of Class claims, foster economies of time, effort, and expense and ensure uniformity of decisions;

    v.  The lawsuit presents no difficulties that would impede its management by the Court as a class action; and

    vi.  Defendants have acted on grounds generally applicable to Class members, making class-wide monetary and injunctive relief appropriate.

44. Defendants' violations of N.J.S.A. 56: 8-1 *et seq*. and the common law are applicable to all members of the Class, and Plaintiff is entitled to have Defendants enjoined from engaging in illegal and deceptive conduct in the future.

## FIRST CAUSE OF ACTION
**(Violation of N.J.S.A. 56: 8-1 *et seq*.)**

45. Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1-44 above as if fully set forth herein.

46. The Consumer Fraud Act prohibits, *inter alia*:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise. . . .

N.J.S.A. § 56:8-2.

47. Defendants' misrepresentations and false, deceptive, and misleading statements with respect to the rates it charges for natural gas and electricity, as described above, constitute affirmative misrepresentations in connection with the marketing,

advertising, promotion, and sale of natural gas and electricity in violation of the Consumer Fraud Act.

48. Defendants' false, deceptive, and misleading statements and omissions would have been material to any potential consumer's decision to purchase natural gas or electricity from Palmco.

49. Defendants also failed to inform customers that their rates are substantially higher than those based on the NYMEX closing price or the LMP and those based on prevailing market conditions. That information would have been material to any consumer deciding whether to purchase natural gas or electricity from Palmco.

50. Defendants made these false, deceptive, and misleading statements and omissions with the intent that consumers rely upon such statements.

51. Plaintiff and the other members of the Class entered into agreements to purchase natural gas and/or electricity from Palmco for personal use and suffered ascertainable loss as a direct and proximate result of Defendants' actions in violation of the Consumer Fraud Act.

52. As a consequence of Defendants' wrongful actions, Plaintiff and the other members of the Class suffered an ascertainable loss of monies based on the difference in the rate they were charged versus the rate they would have been charged had Palmco charged a rate based on NYMEX closing prices or LMP and prevailing market conditions or had they not switched to Palmco from their previous supplier.

53. Plaintiff and other members of the Class suffered an ascertainable loss caused by Defendants' misrepresentations and omissions because they would not have entered into an agreement to purchase natural gas or electricity from Palmco if the true facts concerning

its rates had been known.

54. By reason of the foregoing, Defendants are liable to Plaintiff and the other members of the Class for trebled compensatory damages; punitive damages; attorneys' fees, and the costs of this suit. N.J.S.A. §§ 56:8-2.11, 8-2.12, 8-19.

55. Defendants' conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to, the life, health, safety, and well-being of Plaintiff and the other members of the Class. Defendants are therefore additionally liable for punitive damages, in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
### (Breach of Contract)

56. Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1-55 above as if fully set forth herein.

57. Plaintiff and the Class entered into valid contracts with Palmco for the provision of natural gas and/or electricity supply. *See* Exhibit 1.

58. Pursuant to that contract, Palmco agreed to charge a rate for natural gas that "varies from month to month based on the applicable monthly NYMEX closing price for natural gas, applicable interstate transportation costs, and supply and agency functions that Palmco performs for you, and other prevailing market conditions." *See* Exhibit 1.

59. Pursuant to the contract, Plaintiff and the Class agreed to pay that rate, and they did so.

60. However, Palmco failed to perform its obligations under the contract because it charged a rate for natural gas that was not based on the factors upon which the parties agreed the rate would be based.

61. Plaintiff and the Class were damaged as a result because they were billed, and

15

they paid, a charge for natural gas that was higher than it would have been had Palmco based its rate on the agreed upon factors.

62. Under the contract, Palmco promised to charge a rate for electricity that "will vary from month to month" and "will be based on a monthly zonal locational marginal price ("LMP") determined on a day ahead or real time basis, any supply and agency functions that Palmco performs for you, certain transmission capacity, ancillary, and administrative costs incurred by Palmco, and other prevailing market conditions." *See* Exhibit 1.

63. Pursuant to the contract, Plaintiff and the Class agreed to pay that rate, and they did so.

64. However, Palmco failed to perform its obligations under the contract because it charged a rate for electricity that was not based on the factors upon which the parties agreed the rate would be based.

65. Plaintiff and the Class were damaged as a result because they were billed, and they paid, a charge for electricity that was higher than it would have been had Palmco based its rate on the agreed upon factors.

66. By reason of the foregoing, Defendants are liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus attorneys' fees.

### THIRD CAUSE OF ACTION
### (Unjust Enrichment)

67. Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1-66 above as if fully set forth herein.

68. By engaging in the conduct described above, Defendants have unjustly enriched themselves and received a benefit at the expense of Plaintiff and the other members

16

of the Class and Defendants are required, in equity and good conscience, to compensate them for the damages that they have suffered as a result of Defendants' actions.

69. It would be unjust for Defendants to retain the payments Plaintiff and the Class made for excessive charges.

70. By reason of the foregoing, Defendants are liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus attorneys' fees.

WHEREFORE, Plaintiff respectfully requests that the Court should enter judgment against Defendants as follows:

1. Certifying this action as a class action, with a class as defined above;

2. On Plaintiff's First Cause of Action, awarding against Defendants damages that Plaintiff and the other members of the Class have suffered, trebled, and granting appropriate injunctive relief;

3. On Plaintiff's Second Cause of Action, awarding against Defendants damages that Plaintiff and the other members of the Class have suffered as a result of Defendants' actions;

4. On Plaintiff's Third Cause of Action, awarding against Defendants' damages that Plaintiff and the other members of the Class have suffered;

5. Awarding Plaintiff and the Class punitive damages;

6. Awarding Plaintiff and the Class interest, costs and attorneys' fees; and

7. Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiff hereby demands a trial by jury.

Dated: March 13, 2014
White Plains, New York

**MEISELMAN, PACKMAN, NEALON, SCIALABBA & BAKER P.C.**

By: /s/ D. Greg Blankinship
D. Greg Blankinship
Todd S. Garber
Jeremiah Frei-Pearson
Shin Y. Hahn
1311 Mamaroneck Avenue
White Plains, New York 10605
Tel: (914) 517-5000
Fax: (914) 517-5055
gblankinship@mpnsb.com
JFrei-Pearson@mpnsb.com
tgarber@mpnsb.com
shahn@mpnsb.com

*Attorneys for Plaintiff and the putative class*