# MEISELMAN, PACKMAN,
# NEALON, SCIALABBA & BAKER P.C.

Attorneys at Law

1311 MAMARONECK AVENUE, WHITE PLAINS, NY 10605
TEL: (914)517-5000  |  FAX: (914)517-5055

April 14, 2014

**VIA ECF AND FEDERAL EXPRESS**

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: ***Komoda v. Palmco Energy NJ, LLC, et al.***
**Civil Case No. 14-CV-1679 (KAM)(VVP)**

Dear Judge Matsumoto:

We are counsel to Plaintiff in the above-referenced matter. We write in response to Palmco Energy NJ, LLC and Palmco Power NJ, LLC's (collectively, "Defendants" or "Palmco") request for a pre-motion conference regarding their proposed motion to dismiss Plaintiff's Complaint. That motion will be an exercise in futility.

1.  **This Court Has Subject Matter Jurisdiction.**

Under the Class Action Fairness Act ("CAFA"), federal courts have original jurisdiction over class actions where, among other requirements, at least one member of the proposed class and one defendant are citizens of different states. 28 U.S.C. § 1332(d)(2)(A). Defendants argue that the Court lacks subject matter jurisdiction in this case because both Defendants and Plaintiff are citizens of New Jersey and therefore, no minimal diversity exists under CAFA. But minimal diversity exists here because: (1) at least one member of the Class either has a residence in New Jersey but is a citizen of a different state, or (2) at least one Class member no longer resides in New Jersey.

First, the class is composed of Palmco customers that <u>reside</u> in New Jersey. But diversity turns on citizenship, which is not the same as residency. *See McMorris v. TJX Companies, Inc.*, 493 F. Supp. 2d 158, 163 (D. Mass. 2007) ("[That] this putative class . . . is composed entirely of residents of Massachusetts, does not, by definition, foreclose the inclusion of non-citizens as well. This suffices to support the assertion of federal jurisdiction in this case."). It is more than plausible that one Class member who is a citizen of a state other than New Jersey purchased energy from Palmco for a second home or a vacation property in New Jersey, which establishes minimal diversity. Second, it is certain that numerous Class members moved out of New Jersey during the Class period (six years), and thus there is minimal diversity. *See id.* at 164 ("TJX has sufficiently alleged a 'reasonable probability' that at least one member of the McMorris class is domiciled in a state other than Massachusetts or Delaware, the two states in which TJX is domiciled.").

MEISELMAN, PACKMAN,
NEALON, SCIALABBA & BAKER P.C.

Defendants further argue that ratemaking is a legislative function, not a judicial one, and therefore their rates cannot be challenged. But Plaintiff does not challenge Defendants' rates *per se*. Rather, Plaintiff alleges that Defendants induce consumers to switch to Palmco using false and misleading representations regarding the rates it will charge. In other words, Plaintiff does not contest that, in New Jersey's deregulated energy market, Palmco can charge whatever rate it chooses. But Palmco, like any seller of goods and services, cannot deceive consumers as to the rates it will charge without running afoul of the New Jersey Consumer Fraud Act ("NJCFA"), and Palmco cites to no authority to the contrary.[1]

2.   **Plaintiff States A Viable Claim Under The New Jersey Consumer Fraud Act.**

Plaintiff alleges that Defendants market their energy supply using uniform and non-negotiable contracts that represent to consumers that the price for natural gas "varies from month to month based on the applicable monthly NYMEX closing price for natural gas, applicable interstate transportation costs, and supply and agency functions that Palmco performs for you, and other prevailing market conditions." Complaint ¶ 11. Defendants represent to consumers that the price for electricity "will vary from month to month" and "will be based on a monthly zonal locational marginal price ('LMP') determined on a day ahead or real time basis, any supply and agency functions that Palmco performs...certain transmission capacity, ancillary, and administrative costs incurred by Palmco, and other prevailing market conditions." Complaint ¶ 26. The Complaint also pleads that these are false representations because Palmco's gas rates are not based on the NYMEX closing price and its electricity rates are not based on LMP. The Complaint renders these allegations plausible by demonstrating that Palmco's rates rise or remain steady when the NYMEX closing price and the LMP fall. Complaint ¶¶ 20, 21, 36, 37. The Complaint also alleges that Palmco's rates are not based on prevailing market conditions because its rates are much higher than both the utilities' rates and other independent energy companies. Complaint ¶¶ 16-18, 31-33.

Defendants argue that their very high rates are explained by "supply and agency functions." But Palmco fails to explain how these charges, which are not subject to substantial fluctuations, account for the fact that the rates it charged Plaintiff were up to six times higher than rates the local utility charged. Complaint ¶ 15. And the Complaint precludes this argument, because it specifically pleads that supply and agency functions do not account for Palmco's exorbitant rates. Complaint ¶¶ 22, 38.

These allegations are more than sufficient to render Defendants' motion to dismiss futile. *See Miller v. American Family Publishers*, 284 N.J. Super. 67, 83 (Chan. Div. 1995) (holding that plaintiff pled a prima facie violation of the New Jersey Consumer Fraud Act by demonstrating "that defendant's activities are likely to mislead an average, reasonable

---

[1] Defendants' citation to *Petition of Elizabethtown Water Co.*, 107 N.J. 440 (1987) is, to be kind, curious. That case involved rate setting by a utility before the electricity market was deregulated. At that time, and with respect to the rates utilities charged, ratemaking was a legislative function. Now, independent electricity companies may set rates without regulatory or legislative oversight, but because their rates are not filed with any regulatory body, Defendants cannot seek refuge in the filed rate doctrine.

## Meiselman, Packman, Nealon, Scialabba & Baker P.C.

consumer."). Whether or not Defendant's practices are deceptive is a question of fact that should not be resolved on a motion dismiss. *See Slack v. Suburban Propane Partner, L.P.*, No. 102548, 2010 WL 5392845, *7 (D.N.J. Dec. 22, 2010) ("Whether a practice itself is unfair for purposes of the New Jersey Consumer Fraud Act is a classic jury question.") (quotation marks and citations omitted).[2]

3. **Plaintiff States A Viable Claim For Breach Of Contract.**

Defendants argue that Plaintiff's contract claim fails because he did not satisfy his contractual obligations with regard to dispute resolution. But there is no mandatory dispute resolution clause in the agreement. Instead, the agreement merely provides customers with a contact number in case they have "questions or complaints," and states that they "may" contact the New Jersey Board of Public Utilities ("BPU") if they are not satisfied with Palmco's response. Nowhere does the agreement specify that consumers must call Palmco or the BPU to complain before they can seek redress in the courts for Defendants' deceptive behavior. Moreover, Plaintiff was not required to contact Palmco or utilize administrative remedies that would be futile. *See Ashley v. Ridge*, 288 F. Supp. 2d 662, 667 (D.N.J. 2003) ("Courts have found that the exhaustion of administrative remedies may not be required when available remedies provide no opportunity for adequate relief [or] an administrative appeal would be futile.") (*citing Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995)). Plaintiff's breach of contract claim is more than adequately plead.

4. **Plaintiff States A Viable Claim For Unjust Enrichment.**

Defendant argues that the contract precludes Plaintiff's unjust enrichment claim. But Plaintiff pleads that claim in the alternative, and dismissal at this stage is unwarranted. *See Dewey v. Volkswagen AG*, 558 F.Supp.2d 505, 528-29 (D.N.J. 2008); *Titan Stone, Tile & Masonry, Inc. v. Hunt Constr. Group, Inc.*, 2006 WL 2788369, at *5 (D.N.J. Sept. 26, 2006) ("While it is true that some of plaintiff's quasi-contractual or other equitable claims may be dismissed as inconsistent at a later time in these proceedings, it is far too early to do so now.")

We thank Your Honor for your consideration on this matter.

---

[2] Palmco also argues that charging an exorbitant rate does not violate the NJCFA. But Plaintiff alleges that Defendants made affirmative misrepresentations regarding the rate it would charge for energy, not just that the rates standing alone are exorbitant. Cases cited by Defendants on this point do not support their motion to dismiss. *See Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 416, 421 (1995) (holding that "charging five or five-hundred dollars more for an item than the price charged by a nearby competitor [does not amount] to consumer fraud" but also holding that affirmative misrepresentations do constitutive violations of NJCFA); *Quigley v. Esquire Deposition Servs., LLC*, 409 N.J. Super. 69, 79, 975 A.2d 1042, 1048 (App. Div. 2009) (noting that while allegations of excessive prices standing alone do not state a claim under the NJCFA, affirmative misrepresentations regarding such prices do state such a claim).

3

MEISELMAN, PACKMAN,
NEALON, SCIALABBA & BAKER P.C.

Respectfully Submitted,

MEISELMAN, PACKMAN, NEALON,
SCIALABBA & BAKER P.C.


/s/ D. Greg Blankinship
D. Greg Blankinship

CC: Counsel of Record via ECF